NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-1397

COMMONWEALTH

vs.

DARWIN CONTRERAS.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Following a jury trial in the District Court, the defendant was convicted of operating a motor vehicle while under the influence of alcohol, in violation of G. L. c. 90, § 24 (1) (a) (1), and operating a motor vehicle without a valid license, in violation of G. L. c. 90, § 10.  On appeal, he argues that the motion judge erred in denying his motion to suppress evidence and that the trial judge erred in permitting two police officers to offer their lay opinion that he was intoxicated.  We affirm.

1.  Motion to suppress.  Prior to trial, the defendant filed a motion to suppress all evidence obtained by the police following a stop of his truck, contending that the stop was

unlawful because it was not supported by reasonable suspicion as required by Terry v. Ohio, 392 U.S. 1 (1968).[1]  Following a hearing at which two police officers from the Waltham police department testified, the motion judge concluded that the stop was lawful and denied the motion in a ruling from the bench.  We summarize the testimony of the officers, which the judge fully credited, as follows.

At approximately 9:10 P.M. on July 15, 2023, a dispatch was broadcast over the Waltham police radio reporting a fight involving three Hispanic men in the area of Woerd Avenue and Logan Park.  The dispatch was based on information provided in two 911 telephone calls.  Officer Ryan Toland was about two minutes away from the area where the fight allegedly had occurred when he heard the dispatch.  He activated his emergency lights and drove to the area.  While he was en route, a second broadcast provided additional information that one of the men was leaving the area in a red pickup truck.  Officer Toland saw a red pickup truck traveling toward him as he was driving down Woerd Avenue.  Before passing Officer Toland, the operator of

---

[1] Specifically, the defendant sought to suppress empty beer bottles seized by the police from the cab and rear bed of the truck, statements he made to the police regarding his consumption of alcohol and lack of a valid license, and all observations the police made of him during the encounter including his performance in field sobriety tests.

2

the truck turned down another street. Believing that the driver of the truck had been involved in the fight, Officer Toland followed the truck and stopped it. Officer Toland also believed that the driver may have turned down the other street to avoid him. Upon approaching the truck, Officer Toland saw numerous empty beer bottles in the cab and the rear bed. The driver, subsequently identified as the defendant, had bloodshot and glassy eyes and an odor of alcohol on his breath. Because the defendant primarily spoke Spanish, Officer Toland asked for assistance from a Spanish speaking officer. Officer Allen Galdamez, who speaks Spanish, arrived soon thereafter. In response to Officer Galdamez's questions, the defendant admitted that he did not have a valid driver's license and that he had been drinking with a friend after work and there was a fight. Like Officer Toland, Officer Galdamez testified that the defendant had glassy, bloodshot eyes and he too detected the odor of alcohol. The defendant agreed to participate in field sobriety tests, and when he got out of the vehicle, he was unsteady on his feet.

Because Officer Toland stopped the defendant's truck based on information provided in two 911 telephone calls, the judge considered whether the Commonwealth had established both the indicia of reliability of the transmitted information and the

3

particularity of the description of the truck.  To determine whether the information relayed within the dispatch was reliable, the judge applied the familiar two prong test set forth in Aguilar v. Texas, 378 U.S. 108 (1964), and Spinelli v. United States, 393 U.S. 410 (1969) (Aguilar-Spinelli test) and concluded that (1) the basis of knowledge test was satisfied because the callers were reporting their firsthand observations, and (2) the veracity test was satisfied because the two callers were not anonymous.[2]  With respect to the particularity of the description of the truck, the judge noted that both callers saw the departure of a red pickup truck in real time and both callers either saw or heard the arrival of the police while still on the phone.  Based on these facts, the judge denied the motion.

"In reviewing a ruling on a motion to suppress, we accept the judge's subsidiary findings of fact absent clear error 'but

---

[2] During the course of the hearing, the judge listened to the audio recording of both 911 calls.  Although the recording was not formally admitted in evidence as an exhibit, the judge made clear that the recording was "all on the record."  Prior to oral argument, the Commonwealth filed a motion pursuant to Mass. R. A. P. 8 (e) (1), as appearing in 481 Mass. 1611 (2019), and 9 (b), as appearing in 481 Mass. 1615 (2019), seeking permission to provide the recording to us.  The defendant opposes the motion.  Given that the defendant did not object when the recording was played at the hearing and he himself relied on portions of the recording in his argument to the judge, we discern no proper basis for his opposition to the Commonwealth's motion, which we now allow.

4

conduct an independent review of [her] ultimate findings and conclusions of law'" (citation omitted). Commonwealth v. Perez, 80 Mass. App. Ct. 271, 273 (2011). In this case, our independent review leads us to the same conclusion reached by the motion judge.

Where, as here, a police radio broadcast leads to the stop of a motor vehicle, the proper inquiry is whether the transmitted information bears adequate indicia of reliability. See Commonwealth v. Lopes, 455 Mass. 147, 155 (2009). The motion judge properly focused on this inquiry and her conclusion that the 911 callers had firsthand knowledge of the information they relayed to the dispatcher is fully supported by the record and was sufficient to satisfy the basis of knowledge test. See Perez, 80 Mass. App. Ct. at 275 ("Firsthand observations would satisfy the basis of knowledge test"). The veracity of the 911 callers also was established. The first caller provided her name, address, and telephone number. The second caller provided a telephone number. Our cases have consistently "assign[ed] greater reliability to an eyewitness whose identity is known to the police than one who is anonymous." Id. at 276, quoting Commonwealth v. Depina, 456 Mass. 238, 243 (2010). When a caller is identifiable, "and thus is subject to a charge of filing a false report as a consequence of providing false

5

information to law enforcement," the reliability of the person providing the information is increased.  Perez, supra at 276, citing Commonwealth v. Mubdi, 456 Mass. 385, 397 (2010).  Accordingly, the judge properly found that the veracity test had been met.

We further conclude that the description of the truck was sufficiently particular to permit Officer Toland to reasonably believe it was the same truck described in the dispatch.  While it is true, as the defendant argues, that neither caller provided the make, model, or license plate of the truck, both described the truck's direction of travel and one also described the color of the truck.  More importantly, Officer Toland saw a red truck leaving the area at about the same time as the callers reported the information.  This proximity in time and location was an appropriate factor for the judge to consider in determining whether the description was sufficient in the circumstances.  See Lopes, 455 Mass. at 157-158.  In sum, the judge properly concluded that the information provided in the 911 calls, including the description of the defendant's truck, provided Officer Toland with reasonable suspicion to conduct a lawful investigatory stop.  Accordingly, the motion to suppress was properly denied.

2.  Lay opinion testimony.  Over the defendant's objection, both Officers Toland and Galdamez testified at trial that the defendant was "drunk."  Their opinions were based on their observations of the defendant and his performance on field sobriety tests.  Before offering his opinion, Officer Toland testified as he had at the hearing on the motion to suppress that he "observed the defendant to have bloodshot, glassy eyes, and to have an odor of an alcoholic beverage coming from his breath."  In addition, Officer Toland described the defendant's inability to complete the field sobriety tests he administered. Officer Galdamez similarly testified that the defendant had slurred speech, red, bloodshot eyes, and a strong odor of alcohol.  Before he gave his opinion, he too testified that the defendant "was unsteady on his feet" during the administration of the field sobriety tests.  Because the defendant objected, we review for prejudicial error, and we discern none.  See Commonwealth v. Moreno, 102 Mass. App. Ct. 321, 324 (2023).

It is well settled that lay witness opinion testimony based on the witness's voluntarily based perceptions or observations are admissible.  See Mass. G. Evid. § 701 (2024).  Moreover, "[t]he testimony of a police officer about the results of ordinary field sobriety tests like those involved in this case . . . is lay witness testimony, not expert witness testimony."

7

Commonwealth v. Brown, 83 Mass. App. Ct. 772, 774 n.1 (2013). See Moreno, 102 Mass. App. Ct. at 324 ("[T]ypical field sobriety tests do not supply the basis for a scientific opinion about whether a person is under the influence of alcohol of the level of intoxication" [quotation omitted]). Nor did the officers' testimony regarding their experience and training transform their lay opinions into that of an expert. In this case, the officers' opinions were squarely based on their observations of the defendant. Consequently, there was no error. See Moreno, supra at 324-326.

Judgments affirmed.

By the Court (Blake, C.J.,
  Vuono & Neyman, JJ.[3]),

Clerk

Entered: July 2, 2026.

---

[3] The panelists are listed in order of seniority.